MALDEN BRIDGE *vs.* SALEM TURNPIKE & CHELSEA BRIDGE CORPORATION.

The plaintiff and the defendant were jointly and equally interested in the tolls of a bridge which had been taken by the right of eminent domain and laid out as a public highway. A net balance of tolls received after deducting all known claims remained in the hands of the defendant. *Held*, that the share of the plaintiff should be paid to it, upon its furnishing suitable security to the defendant against all possible outstanding liabilities.

BILL IN EQUITY. The facts appear in the opinion of the court. WELLS, J.* The principal controversy in this case is upon a question of fact. It may be stated briefly thus:

The plaintiff and defendant were jointly interested in the property and franchise of the Chelsea Bridge ; the legal title being held by the defendant, with other property and rights which it

―――――――――

* ENDICOTT, J., did not sit in this case.

held exclusively, as a turnpike and bridge corporation. The property belonging to the Chelsea Bridge included a dwelling-house and land in Charlestown, called the " tollman's house." The interest of the plaintiff was represented by certificates, as of corporate shares, which were distributed among its members or shareholders. The defendant managed the affairs of the bridge, rendering accounts and paying over annually to the plaintiff one half the net receipts from the tolls.

The turnpike and bridge were taken and laid out as a highway under an act of the legislature. All the property of the Chelsea Bridge was taken for this purpose except said house and land in Charlestown. In estimating the damages to be paid to the owners of the property, the commissioners first determined the value of the entire interests of the plaintiff and defendant in the property and franchise of the Chelsea Bridge, having reference, among other things, to the annual rate of dividends, and the market value of the shares as corporate stock; and allowed the plaintiff one half of this amount. They then determined, in like manner, the value of the entire interest of the defendant in the property and franchises held by it, including one half of the Chelsea Bridge property. From this sum they deducted the whole value of the lands, buildings and other property held by that corporation and not taken for the highway. The sum of $5000 was so deducted on account of the house and land in Charlestown belonging to the Chelsea Bridge property. After considerable delay and expense the defendant sold it for $2600 ; one half of which amount the plaintiff now claims.

The ground of the claim is that in the estimate of the commissioners it was assumed that this property belonged exclusively to the defendant, and thus the plaintiff was awarded nothing on account of it ; and that consequently it remained as before, subject to a trust in favor of the plaintiff as an equitable joint owner.

But we do not think this ground is made out by the testimony. It is true that this property was not specifically included in the general estimate of the value of the Chelsea Bridge property. Neither was it in the general estimate of the entire property and rights of the Salem Turnpike and Chelsea Bridge Corporation.

Those general estimates appear to have been made upon the basis, partly of the productive capacity of the property and rights, considered as a whole, and partly of the market value of the shares. Whether the ownership of this specific property affected those estimates, and if so, in what manner and to what extent, is not, and probably cannot be shown. But its value was specifically deducted from the general estimate of the value of the entire property of the defendant.

If those general estimates were right, it is clear that the result of the awards made in this mode would be to discharge the legal estate of the defendant from all equitable claim of the plaintiff to the house and land. Even if they were to some extent affected by an erroneous supposition that this property belonged exclusively to the defendant, there would be no equity in correcting the error of the commissioners in this mode ; especially without showing the precise extent to which that error affected the respective estimates. That, as already suggested, is not and cannot be shown.

The fact that the basis of estimate adopted was substantially in accordance with the claim of the Malden Bridge proprietors, as made before the commissioners, is a circumstance to be considered in judging of the equity of the present claim.

The deed, by which the defendant acquired the land in Charlestown, was made to the " Chelsea Bridge," as grantee. It is urged by the plaintiff that it was not discovered until after the awards of the commissioners had been accepted, that the deed contained this evidence that the property was held for that joint interest ; and that by reason of this mistake of fact all parties, the plaintiff included, acted upon the supposition that the defendant held the absolute title. But if this mistake made any difference in the result, we do not see that it furnishes any ground of relief ; even if the means of relief were open. The proprietors knew what their equitable interests were, and those were all that were of importance in the hearing before the commissioners. Besides, the state of the title was matter of record, and it was laches rather than mistake, if the facts were not known to the parties interested. We are not satisfied that the plaintiff has suffered any wrong in this particular. We are satisfied that it would be in-

equitable to attempt to correct any possible wrong in the mode proposed.

The defendant admits that it has in hand, from receipts for tolls, a net balance of $1261.26 which belongs to the joint account of the plaintiff and defendant; and that "there are no debts known to the defendants justly chargeable to account of Chelsea Bridge, except charges for legal advice in settling affairs of said corporation and said bridge." The answer denies the authority of the court to order the defendant to declare a dividend; but avers readiness to pay over to the plaintiff one half of said balance upon "receiving indemnity against any claims which may be presented, justly chargeable against said Chelsea Bridge;" and offers "to pay the same on such security as to the court shall seem proper."

As the business of the Chelsea Bridge ceased before April 1, 1870, it is not probable that any claims, not now known, will ever be presented. But it is urged that, until six years have elapsed, there is a possibility of such claims, against which the defendant is entitled to indemnity.

The objection, on the part of the Malden Bridge, is that, as a corporation, its business is at an end, and it has ceased to hold property; that the money, when received, will pass directly to its individual proprietors, who are holders of certificates of interest in the Chelsea Bridge; who, if any one, must furnish the required indemnity; and that while most of them will be ready to do so, to the extent of the respective share of each, there are some who cannot or will not.

The only question, upon this part of the case, is whether the court will exercise its chancery powers to relieve the plaintiff from its embarrassment in this respect.

Neither the plaintiff, nor its individual proprietors, who hold the certificates of interest in the Chelsea Bridge, are stockholders in the defendant corporation. The arrangement for joint ownership of that bridge, authorized by the Act of March 6, 1802 — St. 1801, c. 63, §§ 17, 20 ; 2 Mass. Special Laws, 506, — was not one of corporate organization. It merely authorized the two corporations to exercise rights of property and franchise to a limited

extent in common. The certificates given to the plaintiff and distributed to its proprietors, represented rights of property only, and not of membership.

The question, discussed at the bar, whether this court can or will in any case interfere to order directors of a corporation to declare a dividend to its stockholders, does not arise.

By the terms of the joint arrangement, one half of the net receipts is to be paid to the plaintiff corporation. The sum is due, not as a corporate dividend, but as a balance of account on settlement between partners or part-owners. The several persons ultimately entitled to receive it, by virtue of their certificates, issued to represent the half interest of the plaintiff, are not entitled to receive it in their own right directly from the defendant. Their dividends are made out of the sum so payable to the plaintiff corporation, after it has been first separated from the general funds of the defendant. The corporation of the proprietors of the Malden Bridge is therefore, not only a necessary party to demand and receive the money for the benefit of those who hold these certificates, and to maintain any suit for adjustment of the amount thereof; but, by the terms of the arrangement for the joint interest, is the only party with whom the defendant is to be required to deal.

As it is reasonable that the defendant should be protected against possible outstanding liabilities chargeable upon this fund, and as the defendant cannot properly be required to deal with the several holders of certificates separately, the security required for such protection must be given in the name and behalf of the plaintiff corporation, for its entire share of responsibility ; looking to the fund received, for indemnity of those who furnish the security, until other provision therefor shall be made among its own members.

Upon furnishing suitable security the plaintiff corporation is entitled to have paid over to it by the defendant one half of the said sum of $1261.26, with any interest that may have accrued thereon since the account was made up.    *Decree accordingly.*

*G. W. Phillips*, for the plaintiff.

*J. W. Perry & L. S. Tuckerman*, for the defendant.