FREDERICK D. REIERSEN & another[1] vs. COMMISSIONER
OF REVENUE.

No. 87-872.

Suffolk.   April 8, 1988. — June 22, 1988.

Present: GRANT, KASS, & SMITH, JJ.

*Domicil. Taxation,* Income tax.

On a taxpayer's appeal from a decision of the Appellate Tax Board, this court
   held that the subsidiary facts found by the board required the finding
   that the taxpayer, who had lived and worked in the Republic of the
   Philippines since 1975, had had a present and future intent during the
   tax years 1977, 1978, and 1979, to make the Philippines his domicil,
   that is, his home and the center of his business, social and civic life,
   with the result that he was exempt during the years in issue from personal
   income tax liability to the Commonwealth. [129-131]

APPEAL from a decision of the Appellate Tax Board.

*Barry A. Bachrach* for the taxpayers.

*Jamin Raskin,* Assistant Attorney General, for the Commis-
sioner of Revenue.

KASS, J. For the years 1977, 1978, and 1979, Frederick D.
Reiersen claimed exemption from income tax liability to the
Commonwealth on the grounds that he was domiciled in the
Republic of the Philippines and earned his entire income from
sources in that country. See G. L. c. 62, §§ 1(f), 4, & 5A.
The Commissioner of Revenue (commissioner) determined
Reiersen's domicil to be in Worcester, a ruling which the
Appellate Tax Board (board) affirmed.[2]

Although where a person is domiciled is mainly a question
of fact, *Mellon Natl. Bank & Trust Co.* v. *Commissioner of*

_____

[1] Doreen M. Reiersen, wife of Frederick.

[2] There is no controversy about Mrs. Reiersen's domicil; it is in Worcester.
She, however, received no taxable income.

*Corps. & Taxn.*, 327 Mass. 631, 632 (1951), the elements to be considered in locating a domicil present a question of law.[3] See *Hawes* v. *Club Ecuestre El Commandante*, 598 F.2d 698, 699, 702 (1st Cir. 1979); Bailey & Van Dorn, Taxation § 491 (1986). The taxpayer argues that the commissioner and the board have applied criteria superseded by the opinions in *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 576-577 (1974), *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 161-162 (1978), *Ramos* v. *Registrars of Voters of Norfolk*, 374 Mass. 176, 179 (1978), and *Coulombre* v. *Registrars of Voters of Worcester*, 3 Mass. App. Ct. 206, 208 (1975). Those cases relied heavily on the analysis of domicil which appears in the Restatement (Second) of Conflict of Laws (1969). "A person's domicil is usually the place where he has his home." *Id.* at § 11 comment a. Home, in turn, is "the place where a person dwells and which is the center of his domestic, social and civil life." *Id.* at § 12. A change of domicil occurs "when a person with capacity to change his domicil is physically present in a place and intends to make that place his home for the time at least; 'the fact and intent must concur.'" *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. at 576-577 (citations omitted). See also *Opinion of the Justices*, 5 Met. 587, 589 (1843); Restatement (Second) of Conflict of Laws §§ 15-16 & 18 (1969).

For his part, the commissioner urges that the definition of domicil articulated for voter registration purposes in the *Hershkoff* line of cases may be more flexible than is appropriate for tax cases. If, the commissioner suggests, a classic formulation of domicil, such as appears in *Commonwealth* v. *Davis*, 284 Mass. 41, 49-50 (1933), is applied, the domicil compass needle infallibly points to Worcester.

---

[3] This latter proposition is handsomely illustrated by the celebrated Dorrance litigation in which New Jersey and Pennsylvania courts, looking at the same primary facts, held the decedent to be domiciled in their respective states. See *In re Estate of Dorrance,* 115 N.J. Eq. 268 (1934), aff'd, 13 N.J. Misc. 168 (Sup. Ct. 1935), aff'd, 116 N.J.L. 362, cert. denied, 298 U.S. 678 (1936), and *Dorrance's Estate,* 309 Pa. 151, cert. denied, 288 U.S. 617 (1932). See also *Hill* v. *Martin,* 296 U.S. 393 (1935).

We sketch the facts found by the board, with some amplification from uncontroverted evidence in the record. In 1966, having completed high school, Reiersen went to work as a junior maintenance man at Sprague Electric Company in Worcester. He advanced rapidly and within four years began to travel on troubleshooting and "set up" missions for Sprague to Hong Kong, Korea, Mexico, the Philippines, and Taiwan. In 1974 he spent six months in the Philippines, where Sprague was consolidating some seventy percent of its overseas semiconductor assembly and packaging operations.

The Philippines task took on long term aspects and in May, 1975, Reiersen moved his wife and children there. Mrs. Reiersen, however, did not like living in the Philippines, and in 1977, expecting a baby, she returned to Worcester. There she and the children resumed residence at 14 Minthrone Street, a house which belonged to her aunt and which Reiersen bought in 1980 to have as a place for his wife and children and as an investment. Reiersen's responsibilities in the Philippines grew, and he flourished. He became the managing director of Sprague Philippines, Inc., an operation that employs from 750 to 1,200 persons and for which Reiersen has plenary executive responsibility.

About twice a year Reiersen comes to Worcester to deal personally (rather than by electronic means) with the Sprague central office and to visit with his family. The marriage between the Reiersens persists as a legal status out of respect for in-laws and religious feelings. Reiersen supports his wife and children. Otherwise, there is no conjugal relationship — sexual, spiritual, or societal. When he visits in Worcester, Reiersen stays at the house he owns with his wife, but they do not share a bedroom. Mrs. Reiersen's domicil is not in issue in the case; it is undoubtedly in Worcester. See note 2, *supra*. A wife who lives apart from her husband can acquire a separate domicil. Restatement (Second) of Conflict of Laws § 21 & comment d (1969).

In the Philippines, Reiersen rents a house (as a foreigner, he may not, under local law, own land), possesses a Philippines driver's license, owns an automobile, keeps a bank account, files tax returns, holds a Philippine residence certificate, be-

longs to social clubs, and maintains extensive business and social contacts. Reiersen expressed no ambivalence about where he chose to live and work. "I come from nothing, and I had it all there [in the Philippines] and I continue to have it all there, and I met — I have never had many friends here [in Massachusetts], and I developed a lot of friends there, and I just love the country and I love its people." If not employed by Sprague, he nonetheless would consider his business and social opportunities to be in the Philippines. Since moving to the Philippines, he has spent two weeks out of each year (i.e., less than four percent of the year) in the United States.

On the other side of the domicil ledger, Reiersen has not given up American citizenship (a minor factor, as domicil has no necessary connection with rights of citizenship, *Rummel* v. *Peters*, 314 Mass. 504, 513 [1943]), shows Worcester as his residence on an American passport (Reiersen testified he thought he was required to do so, but if he were mistaken on that score, would change it on the next renewal), maintains a Massachusetts driver's license, owns an interest in the Worcester house, and maintains a bank account in Massachusetts.

As we have indicated, the parties have enthusiastically debated whether the meaning of domicil is the same for all purposes. To illustrate: Is a person's domicil for purposes of State taxation (founded, presumably, on an obligation to pay for government services and protection)[4] necessarily the same as that person's marital domicil (where the concern may be the welfare of the family unit)? The question has enlivened scholars, judges, and lawyers for the better part of the century.

Orthodoxy favors the unitary concept and counts among its adherents Mr. Justice Holmes who, in *Williamson* v. *Osenton*, 232 U.S. 619, 625 (1914), wrote:

"The very meaning of domicil is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined [citation omit-

---

[4] Reese, Does Domicil Bear a Single Meaning? 55 Colum.L.Rev. 589, 593 (1955).

ted]. In its nature it is one, and if in any case two are recognized for different purposes it is a doubtful anomaly."[5]

See to the same effect, and in chronological order, 1 Beale, Conflict of Laws § 9.4 (1935); Restatement (Second) of Conflict of Laws § 11 comment o (which, however, countenances the notion of "rare exceptions"); *Elkins* v. *Moreno*, 435 U.S. 647, 669 n.29 (1978); *Toll* v. *Moreno*, 284 Md. 425, 442 (1979); *Nagaraja* v. *Commissioner of Rev.*, 352 N.W.2d 373, 377 n.8 (Minn. 1984).

The majority of jurisdictions, however, when they have been obliged to apply the term domicil, have decided that it displays varying hues as its application shifts. See *Hayes* v. *Regents of Kentucky State Univ.*, 362 F. Supp. 1172, 1174-1175 (E.D. Ky. 1973); *McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 177 (1926); *Smith* v. *Croom*, 7 Fla. 81, 150 (1857); *In re Estate of Jones*, 192 Iowa 78, 82 (1921); *Worden* v. *Mercer County Bd. of Elections*, 61 N.J. 325, 343 (1972); *Gladwin* v. *Power*, 21 A.D.2d 665 (N.Y. 1964); Reese, Does Domicil Bear a Single Meaning? 55 Colum.L.Rev. at 591-592; Weintraub, An Inquiry into the Utility of "Domicile" as a Concept in Conflicts Analysis, 63 Mich.L.Rev. 961, 984 (1965). See also Reese, The Second Restatement of Conflict of Laws Revisited, 34 Mercer L.Rev. 501, 518-519 (1983).

Massachusetts cases have not confronted the question between the unitary and the flexible approach to domicil, and it is possible to marshal cases for either proposition. One line of cases seems to assume that a person may have only one domicil;[6] another posits that a person may have only one

---

[5] Mr. Justice Holmes, in part, was quoting himself. See *Bergner & Engel Brewing Co.* v. *Dreyfus*, 172 Mass. 154, 157 (1898).

[6] See *Gardiner* v. *Brookline*, 181 Mass. 162, 165 (1902) (a person can have but one domicil); *Feehan* v. *Tax Commr.*, 237 Mass. 169, 171 (1921) (a man may not make one place his home for the general purposes of life and another place his home for the purposes of taxation); *Tax Collector of Lowell* v. *Hanchett*, 240 Mass. 557, 558 (1922) (a person may have more than one home, or be homeless, but every person must have a domicil somewhere and can have only one); *Doyle* v. *Goldberg*, 294 Mass. 105,

domicil *for the same purposes*,[7] leaving the implication that one may have different domicils for different purposes. One suspects that the question has more doctrinal than practical significance. Courts are usually obliged to wrestle with only one domicil question at a time. In a close case, "decision of a question of domicil may sometimes depend upon the purpose for which the domicil concept is used in the particular case." Restatement (Second) of Conflict of Laws § 11 comment o.

So far as the case before us is concerned, the dichotomy in standards of domicil urged by the government need not, and does not, exist, i.e., domicil as defined in *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. at 576-577, is not different from domicil as defined in *Commonwealth* v. *Davis*, 284 Mass. at 50. The *Davis* opinion speaks of "the place of actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode" and of "the principal seat of his residence, of his business, pursuits, connexions, attachments, and of his political and municipal relations." *Ibid*. Compare the reference in *Hershkoff*, at 576, to "the center of his domestic, social and civil life." There is a difference in accent in the two cases as to what works a change in domicil. *Davis* says that original domicil continues in the absence of "compelling

108 (1936) (a person can have but one domicil); *Slater* v. *Munroe*, 313 Mass. 538, 546 (1943) (under the rule that a person may have but one domicil at any particular time, a person may not have a domicil for purposes of taxation and a different domicil for purposes of business, pleasure, social and civic activities); *Rummel* v. *Peters*, 314 Mass. 504, 513 (1943) (one domicil at a time).

[7] See *Abington* v. *North Bridgewater*, 23 Pick. 170, 177 (1839) (a man can have only one domicil, for one purpose, at one and the same time); *Opinion of the Justices*, 5 Met. at 588-589 (every person has a domicil somewhere and no person can have more than one domicil at the same time for one and the same purpose); *Bergner & Engel Brewing Co.* v. *Dreyfus*, 172 Mass. at 157 (domicil, at least for any given purpose, is single by its essence); *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. at 576, and *Dane* v. *Registrars of Voters of Concord*, 374 Mass. at 161 (every person must have a domicil and can have only one domicil at a time, at least for the same purpose); *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113, 119 (1980) (if a person has a domicil in one place for a given purpose, he cannot have one elsewhere for the same purpose).

evidence that it was changed," *Davis* at 49, while *Hershkoff* states that "[a] change of domicil takes place when a person with capacity to change his domicil is physically present in a place and intends to make that place his home for the time at least." *Id.* at 576-577. In context the different tone of the opinions is no mystery. *Davis* involved a purported shift of domicil for tax avoidance purposes to Luling, Texas, where Davis, claiming to have been led there by divine guidance, in fact spent little time and formed no business, social, or civic connections. He continued to spend as much time in Brockton and Buzzards Bay as he had before setting up a place of residence in Luling. *Id.* at 47-48. In *Hershkoff*, college students had, indeed, made Worcester the center of their occupational, social, and civic lives. *Id.* at 572-573, 580.

Reiersen's presence and activity in the Philippines were in no sense a pretext. His was not a temporary mission. In the Philippines he had found business and social success he had not enjoyed in Worcester. There he had made friends and joined clubs. His connections to his family were distant; indeed, so far as his wife was concerned, fragile. He planned to live and work in the Philippines for the time being at least, whether or not employed by Sprague. The board was not, of course, required to believe Reiersen's expressions of intent, but they were uncontroverted and reinforced, rather than weakened, by the nonsubjective evidence. Compare *Commonwealth* v. *Bogigian*, 265 Mass. 531 (1929). That the occasion of his originally arriving in the Philippines was a work assignment, a fact which appears to have struck the board as weighty, is not decisive. See *Commonwealth* v. *Bogigian*, 265 Mass. at 539 (motive actuating a change of residence is of no consequence); *Stifel* v. *Hopkins*, 477 F.2d 1116, 1124 (6th Cir. 1973). The commissioner emphasizes that Reiersen continued to own real estate in Worcester and owned no real estate in the Philippines. As the board found, however, citizens of the United States were not permitted to acquire real estate in the Philippines. Reiersen was not required to shift his citizenship to shift his domicil. See *Rummel* v. *Peters*, 314 Mass. at 513. The addresses which appeared on the Reiersens' tax returns, to which the board gave

some weight, are in this case an extremely uncertain guide. As to Mrs. Reiersen, the Worcester address used on the 1977 and 1978 returns was correct. Of the State returns in the record, the 1977 and 1978 returns list the husband's residence as in the Philippines, and the 1979 return (by that time Reiersen's contest with the Department of Revenue had begun) lists Makati, Philippines, in the space for taxpayer's address at the top of the form. What appears on these papers is less likely to be a persuasive indicator of domicil than the physical, business, social, and civic activities of the person whose domicil is in question.

We think the subsidiary facts found by the board require a conclusion that Reiersen had a present and future intent during the years in issue to make the Philippines his home and the center of his business, social, and civic life. See *Leavitt* v. *Scott*, 338 F.2d 749, 751 (10th Cir. 1964); *Hawes* v. *Club Ecuestre El Comandante*, 598 F.2d at 700-703. The decision of the board is reversed, and a decision is to be entered granting to Reiersen such abatements of his personal income tax as he is entitled to as a domiciliary of the Philippines during 1977, 1978, and 1979.

*So ordered.*