SUSAN H. MCMAHON *vs.* RICHARD A. MCMAHON.

No. 89-P-1038.

Worcester. January 23 & October 10, 1991. - October 28, 1991.

Present: BROWN, PERRETTA, & LAURENCE, JJ.

*Domicil. Divorce and Separation,* Jurisdiction, Division of property, Pension benefits.

The record of a divorce proceeding supported the judge's determination that the husband was a domiciliary of Massachusetts at the time of the divorce, thus the judge properly treated the husband's military retirement benefits as an asset subject to equitable division under G. L. c. 208, § 34, in accordance with the provisions of 10 U.S.C. § 1408 (c) (1), (4) (1988). [505-508]

The record of a divorce proceeding supported the judge's allocation of marital assets pursuant to G. L. c. 208, § 34. [508-509]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on February 3, 1986.

The case was heard by *Arline S. Rotman,* J.

*Robert J. DiLibero* for Richard A. McMahon.

*Thomas F. McEvilly* for Susan H. McMahon.

PERRETTA, J. Richard appeals from that portion of a judgment which assigns forty-five percent of his disposable military retirement pay (see generally *Mansell* v. *Mansell,* 490 U.S. 581 [1989]) to Susan. He claims that under 10 U.S.C. § 1408(c) (1988), the Uniformed Services Former Spouses' Protection Act, the judge lacked the requisite jurisdiction to consider his military benefits in making an equitable division pursuant to G. L. c. 208, § 34. As an additional basis for reversal of the award to Susan, Richard argues that the judge abused her discretion in making a division of that asset where there was no evidence as to its value. Because the judge's findings of fact (as supplemented pursuant to an or-

der of remand by the panel assigned to decide this appeal) show that Richard, at the time of the divorce, was a Massachusetts domiciliary and that he is currently receiving his retirement benefits, we affirm the judgment.

1. *The jurisdiction of the court.* After *McCarty* v. *McCarty*, 453 U.S. 210 (1981), in which the Court held that Federal law preempted application of State property division law to military retirement pay, Congress enacted 10 U.S.C. § 1408. Although § 1408(c)(1) permits a State court to "treat disposable retired or retainer pay payable to a [military] member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction," that authorization is subject to the jurisdictional limitation set out in § 1408(c)(4).

That restriction upon a State court's authorization to treat a military member's disposable retired pay reads as follows: "A court may *not* treat the . . . pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court" (emphasis supplied). Richard claims that his only reason for being in Massachusetts was his assignment to Hanscom Air Force Base and that he is a domiciliary of Florida.

Before turning to the judge's findings of fact concerning Richard's domicil, we set out the controlling principle of law: "The ascertainment of the domicil of a person is mainly a question of fact. *Feehan* v. *Tax Commr.*, 237 Mass. 169, 171 [1921]. *Hutchins* v. *Browne*, 253 Mass. 55, 57 [1925]. *Hayes* v. *Hayes*, 256 Mass. 97 [1926]. General principles governing the nature, acquisition and change of domicil are settled. An exact and comprehensive definition of domicil is difficult. In general it is said to be the place of one's actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode. Every one must have a domicil somewhere.

Every one has a domicil of origin. A domicil once established continues until a new one is acquired regardless of changes in temporary sojourn. Mere absences from home even for somewhat prolonged periods do not work a change of domicil. Intention without the concurrence of the fact of residence is not sufficient to change or to create domicil. Both must coexist. Aspiration, hope, desire or mere verbal assertion, although evidence of intention, cannot overcome the force of irrefutable facts." *Tuells* v. *Flint*, 283 Mass. 106, 109 (1933). See *Dane* v. *Registrars of Voters*, 374 Mass. 152, 161-165 (1978), and cases therein collected and discussed. See also Restatement (Second) of Conflict of Laws § 17 and comment d (1969).

Both Richard and Susan come from Massachusetts. They were married here in 1971. Throughout the marriage, Richard was a member of the United States Air Force. He was assigned to the following places: Otis Air Force Base and Westover Air Force Base in Massachusetts (where the parties' daughter was born), Davis-Monthan Air Force Base in Arizona (where the parties purchased a house, registered to vote, registered their car, and paid taxes), Keflovik, Iceland, George Air Force Base in California (where they lived in on-base housing), Officers' Training School in San Antonio, Texas, Mather and Castle Air Force Bases in California (where the parties' son was born), Blytheville Air Force Base in Arkansas, Loring Air Force Base in Maine, and, finally, Hanscom Air Force Base in Massachusetts.

When Richard was sent to Iceland, Susan could not go with him as housing facilities for families of service members assigned to Iceland were limited. During that tour of duty, Susan returned to Massachusetts, which she still regarded as her home, for the year. She rejoined him when he was assigned to George Air Force Base, and she remained there while he attended Officers' Training School. Throughout Richard's military career and many assignments, Richard and Susan returned to Massachusetts for his thirty days of annual leave.

Richard's transfer to Loring Air Force Base in Maine was welcomed, as neither Richard nor Susan enjoyed living in Arkansas. On their way from Arkansas to Maine, the parties stopped in Florida for a brief visit with Susan's aunt. Other than this visit, the only other time Richard was in Florida was for a family vacation trip to Disneyworld in 1982.

Upon the parties' arrival at Loring Air Force Base in Maine, Richard decided to take advantage of Florida's favorable tax treatment. He declared the family to be Florida domiciliaries. He became a registered voter in Florida in 1982, and has voted in elections by absentee ballots from that State. The parties identified themselves as Florida domiciliaries on their Maine income tax returns. Susan had no "input" concerning Richard's decision on this matter, and her aunt had no knowledge that Richard was using her address in declaring a Florida domicil.

Richard had elected early on in his career to serve as a navigator on Air Force KC-135 Tankers rather than to fly aboard jet fighter planes. The latter type of service entailed flights all over the world and substantial amounts of time away from family. As his tour of duty at Loring Air Force Base was coming to an end, Richard learned of a military program which would allow him to earn flight pay while maintaining a nonflight status. He could be assigned to either Washington, D.C., or Hanscom Air Force Base. Richard expressed his preference for Hanscom, and he was so assigned in 1984.

Upon their arrival in Massachusetts for this assignment, the parties purchased a house, the marital residence, in Leominster. Richard, however, still wished to avail himself of Florida's beneficial tax treatment, and he continued to declare that State as the family's domicil.

On these facts, the judge concluded that the parties had established a domicil other than Massachusetts when they were in Arizona in 1974. She also concluded, however, that the evidence was sufficient to rebut any presumption that, after selling their home and leaving Arizona, the parties' domi-

cil in that State continued. See *Todd* v. *Foster*, 328 Mass. 136, 138 (1951).

Recognizing that a member of the military can establish a domicil different from the one at the time of entry into service, see *Carrington* v. *Rash*, 380 U.S. 89 (1965), the judge focused her attention upon 1984 and the parties' actions upon their return to Massachusetts. Her conclusion that Richard was a Massachusetts domiciliary at the time of the divorce rests upon his actions throughout his many relocations during his military career, his request for assignment to Hanscom, and the purchase of the marital home in Leominster upon his arrival here. On the facts and the law, we see no error in her conclusion. In addition to those authorities previously cited, see *Pickering* v. *Cambridge*, 144 Mass. 244, 245-246 (1887); *Commonwealth* v. *Davis*, 284 Mass. 41, 49-51 (1933); *Reiersen* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 124, 128-130 (1988).

2. *The division.* At the time of the divorce, Richard was still in the Air Force. The judge awarded Susan forty-five percent of Richard's disposable retirement pay and fifty-five percent of the proceeds from the sale of the marital residence. Although given the opportunity to respond to the judge's supplemental findings made pursuant to our order on remand, the parties declined to do so. The supplemental findings show that subsequent to the date of the divorce judgment Richard retired from the military. He is receiving his retirement pay, and the amount of his net monthly benefits is known. His claim of a lack of evidence of value is no longer of any significance. See Kindregan & Inker, Family Law and Practice § 1136 (1990).

At the time of the judgment, the judge made findings of fact which show that she considered all factors relevant under G. L. c. 208, § 34. Those findings have a solid basis in the evidence and support the judge's rationale for the division. See *Bowring* v. *Reid*, 399 Mass. 265, 267-268 (1987). In her supplemental findings, the judge expressly states that Susan is "entitled to more than fifty percent of the marital estate." To make an award consistent with that rationale and

within the cap set on any division of military benefits by 10 U.S.C. § 1408 (see *Mansell* v. *Mansell*, 490 U.S. 581 [1989]), the judge awarded Susan forty-five percent of Richard's monthly net benefits and fifty-five percent of the proceeds from the sale of the marital residence.

We see no abuse of discretion in the judge's decision to afford weight to the facts that during the marriage Richard advanced his career and education by spending significant periods of time away from his family, that as a result of his personal advancement, he has a greater opportunity to acquire income and assets in the future, and that Richard had dissipated marital assets in maintaining a relationship with another woman while married to Susan.

*Judgment affirmed.*