LAY vs. CITY OF LOWELL, 101 Mass. App. Ct. 15

 
 DOMINIK LAY vs. CITY OF LOWELL & another. [Note 1]

101 Mass. App. Ct. 15
 January 14, 2022 - April 28, 2022

Court Below: Superior Court, Middlesex County
Present: Milkey, Massing, & Hershfang, JJ.

 

No. 21-P-436.

Domicil. School and School Committee. School and School District, Residence. Evidence, Prima facie evidence. Moot Question. Injunction. Practice, Civil, Preliminary injunction.

In a civil action brought in the Superior Court by the plaintiff seeking to enjoin the defendants (a city and its election commission) from filling a vacancy on the city's school committee (committee) with anyone else and a declaration that he was domiciled in the city and therefore entitled to serve on the committee, the appeal was not moot, where its resolution in the plaintiff's favor would insulate him from the city's repeated challenges to his eligibility for office [20]; further, no due process violation arose from the judge's consolidation of the plaintiff's application for a preliminary injunction with a trial on the merits, where the defendants were content with the state of the evidence, had no additional evidence to offer, and were happy to rest on the record without additional argument, and where the judge had everything he needed to fairly assess the defendants' arguments and evidence [20-21]; moreover, the judge properly concluded that the commission's decision was not supported by substantial evidence, where the commission evaluated the plaintiff's domicil under an impermissibly narrow legal standard and disregarded evidence indicating the place in which the plaintiff conducted his civic life [21-24]; finally, the judge properly granted the plaintiff's request for a permanent injunction and declared that he was domiciled in the city and eligible to fill the vacancy on the committee, where the plaintiff sufficiently demonstrated that he was a resident of the city, in that, among other evidence, he voted in thirteen city elections, held elective office in the city from 2017 to 2019, purchased property in the city and had lived there continuously since shortly after the purchase, and used his city property's address for his driver's license, real estate license, and motor vehicle registration [24-25].

Civil action commenced in the Superior Court Department on March 12, 2021. 

 The case was heard by William M. White, Jr., J. 

 Christine P. O'Connor, City Solicitor (Nicholas L. Anastasi, Assistant City Solicitor, also present) for the defendants.

 Page 16 

 Roland L. Milliard for the plaintiff.

 MASSING, J. A vacancy on the school committee of Lowell (school committee) was created when a member resigned mid-term. As the person who had received the most votes among the defeated candidates in the last election, the plaintiff, Dominik Lay, was next in line to fill the vacancy under applicable State law. Following a hearing initiated by the city of Lowell (city or Lowell), however, the election commission of Lowell (commission) determined that Lay was not a resident of Lowell and was therefore ineligible to assume the vacant seat.

 Lay immediately brought an action in the Superior Court seeking to enjoin the commission and the city (collectively, defendants) from filling the vacancy with anyone else and for a declaration that he was domiciled in Lowell and entitled to serve. See G. L. c. 56, § 59 (granting Superior Court jurisdiction over civil actions to enforce election laws and authorizing court to "award relief formerly available in equity or by mandamus"). After consolidating Lay's application for a preliminary injunction with a trial on the merits, a Superior Court judge concluded that the commission's decision was not supported by substantial evidence, and judgment entered in Lay's favor. The defendants appeal. Because the commission evaluated Lay's domicil under an impermissibly narrow legal standard, and the judge correctly concluded that the commission's determination was unsupported, we affirm.

 Background. 1. School committee vacancy. On February 26, 2021, a member of the school committee resigned his position. Four days later, the city solicitor submitted a letter to the mayor explaining the process for filling the vacancy. According to the city solicitor, State law required the vacancy to be filled by the person who received the highest number of votes among the defeated school committee candidates in the most recent municipal election, held in November 2019, so long as that candidate remained "eligible and willing to serve." St. 1954, c. 230 ("An Act relative to filling vacancies in elective bodies in certain cities having a plan E charter"). Although that person was Lay, the city solicitor stated that questions regarding "Lay's eligibility have come to the attention of the law department." Specifically, the city solicitor's search of property and tax records indicated that Lay resided in Boston, whereas school committee members must be residents of Lowell. The city solicitor therefore recommended that the matter be referred to the commission to determine Lay's eligibility. 

 Page 17 

 2. Commission proceedings. [Note 2] The commission convened a hearing on March 9, 2021. Prior to the hearing, Lay and the city submitted documentary evidence and legal memoranda. The record includes these submissions, but we know few details of what occurred at the hearing. We are told that Lay did not testify and that the commission asked about his current motor vehicle registration. The commission continued the proceedings to March 11, 2021. At the commission's request, both Lay and the city submitted supplemental materials. Lay's counsel and the city solicitor made additional legal arguments at the March 11 hearing, but no live testimony was introduced. 

 To support its contention that Lay was domiciled in Boston, the city submitted the following documents: a declaration of homestead that Lay had filed twelve years earlier for a property in the Brighton section of Boston; real estate tax records from the city of Boston addressed to Lay at the Brighton property and listing him as the property's primary owner; records from the city of Lowell showing Lay as the owner of a property in Lowell, but listing the Brighton property under "owner address"; and an affidavit from Lowell's chief tax assessor attesting that the city had not assessed excise taxes on Lay's car since 2018.

 To rebut the city's allegations, and to support his contention that he was domiciled in Lowell, Lay submitted an affidavit attesting that he and his sister had coowned the Brighton property since 2009, that he had applied for a residential real estate tax exemption for the Brighton property around that time, and that the residential exemption remained valid because his sister still lived there. He further averred that he and his sister had purchased the Lowell property in 2015, that he had lived at the Lowell property "continuously since shortly after the purchase" and "intend[ed] to reside there indefinitely," and that he had registered to vote in Lowell and had not voted in Boston since relocating to Lowell. He explained that his sister handled "municipal financial matters" with respect to the Lowell property and had requested that the city mail real estate tax and water utility bills to her at the Brighton property where she lived. Lay also submitted deeds for the Brighton and Lowell properties; a record indicating that the city of Boston had not received an application for a residential tax exemption for the Brighton property since 

 Page 18 

2010; and his driver's license, real estate license, and a variety of other records and correspondence listing his address or addressed to him at the Lowell property. [Note 3] In Lay's submission to the commission summarizing the evidence and the relevant case law, Lay's counsel added that Lay had "voted in Lowell since 2015" and "held elective office in Lowell from 2017-2019."

 In response to the commission's questions at the March 9 hearing, Lay submitted another affidavit attesting that his car was registered and garaged in Lowell, where he paid excise taxes from 2016 to 2018; that his sister coowned the car and registered it in Boston in 2018; and that he had given the car away in January 2021. He substantiated his affidavit with a certificate of registration for the car, effective from March 2016 to February 2018, that listed him and his sister as coowners; a current registration certificate in the new owner's name; and a notice from the registry of motor vehicles that his registration had been cancelled effective February 5, 2021. He also submitted a notarized statement from the owner of "the property next door" to his Lowell property, who attested that Lay had been her "next-door neighbor . . . since 2015." 

 The city's legal memorandum to the commission dismissed Lay's evidence as a "hodgepodge of documents" that provided little, or no, support for his contention that he resided in Lowell. According to the city, there is only "a relatively narrow universe of documents that are typically considered controlling in deciding issues of residency," and the real estate tax records for the Brighton property and excise tax records for Lay's car proved that he was not domiciled in Lowell.

 At the conclusion of the March 11 hearing, the three election commissioners present voted on the matter as follows: one voted in favor of the city; one abstained; and the third, the commission's chair (who, we are told, votes only in the case of a tie) did not vote. Based on this vote, the commission ruled that Lay was not a Lowell resident and was therefore ineligible to fill the school committee vacancy.

 Although the commission provided no written explanation of its decision, we infer that its arguments in the Superior Court and 

 Page 19 

on appeal reflect the rationale for its decision. [Note 4] According to the commission, the combination of the homestead declaration for the Brighton property and the vehicle excise taxes issued by Boston in 2019 and 2020 were "prima facie" evidence that Lay was domiciled in Boston. The commission did not consider as "primary evidence" that Lay owned residential property in Lowell and listed his Lowell address on his driver's license. It also dismissed as irrelevant that he had been registered to vote in Lowell since 2015; that he had voted there, and nowhere else, in thirteen elections since purchasing the Lowell property; that he ran for city office twice in that time; and that he had served a prior term on the school committee. [Note 5] 

 3. Superior Court proceedings. The day after the commission issued its decision, Lay filed his Superior Court action for injunctive and declaratory relief. On March 15, 2021, the judge held a hearing on Lay's request to temporarily enjoin the defendants from filling the vacancy, after which both parties filed proposed findings of fact. The judge convened a second hearing on March 23, 2021. At the outset of the hearing, he announced that although he had planned to "take the submissions of the parties and rule," his reading of Mass. R. Civ. P. 65, 365 Mass. 832 (1974), suggested he "should give the parties an opportunity to present evidence." The parties stated that they were content with the state of the record and had no additional evidence to present. The city solicitor added that she would be happy to present oral argument, but that she would also be "happy to rest on the papers as . . . submitted." The judge then entertained vigorous arguments by the parties. The next day he issued a memorandum and order for judgment concluding that the commission's decision was not supported by substantial evidence, granting Lay's request for a permanent injunction, and declaring that Lay was domiciled in 

 Page 20 

Lowell and eligible to fill the vacancy on the school committee. Judgment entered the following day, and the defendants immediately filed a notice of appeal. [Note 6] 

 Discussion. 1. Mootness. While this appeal was pending, Lay served out the remainder of the term in the vacated school committee seat and was elected in November 2021 to serve the next term, representing the school committee district in which his Lowell property is located. In light of this development, we requested the parties to provide supplemental briefing on the issue of mootness. Both parties contend that the appeal is not moot. Directing our attention to the provisions of a 2019 Federal consent decree, the defendants inform us that members of the school committee elected to represent individual city districts are required to be domiciled in that district for one full year preceding their elections. Thus, if the election commission correctly determined that Lay was not domiciled in Lowell in March 2021, he would also have been ineligible in November 2021 to sit for election to his current term. Lay similarly contends that resolution of this appeal in his favor would insulate him from the city's repeated challenges to his eligibility for office. We are persuaded that the appeal is not moot. See Santana v. Registrars of Voters of Worcester, 384 Mass. 487, 493 (1981), S.C., 390 Mass. 353 (1983) (claims of voters who alleged they had been improperly removed from city's voting lists not rendered moot by their subsequent registration to vote, as fact they "had reregistered did not insulate them from the jeopardy of being similarly injured in future elections so long as the defendants' practices remain unchanged").

 2. Consolidation of preliminary injunction hearing with trial on the merits. The defendants argue that the judge denied them due process because he did not provide them sufficient notice or a full opportunity to present their case before consolidating the preliminary injunction hearing with a trial on the merits. See 

 Page 21 

Harris v. Commissioner of Correction, 409 Mass. 472, 474-475 (1991); Mass. R. Civ. P. 65 (b) (2).

 We discern no due process violation. The judge started the March 23 hearing by referring to Mass. R. Civ. P. 65 and specifically asking the parties if they had additional evidence to present. The defendants were content with the state of the record, had no additional evidence to offer, and were "happy" to rest on the record even without additional argument. The parties had submitted what they represented was the complete record of the commission's proceedings and proposed findings of fact. Even as they assert that they were deprived of an opportunity to be heard, the defendants have not articulated what else they could possibly have said or what other evidence they would have offered. Their position was, and remains, that the commission's decision was well grounded in law and supported by the administrative record. The judge had everything he needed to fairly assess the defendants' arguments and evidence. 

 3. Commission's domicil determination. a. Nature of review. Lay initiated his action for judicial review of the commission's decision under G. L. c. 56, § 59, which gives the Superior Court, together with the Supreme Judicial Court, "broad equity power to enforce the election laws." McCarthy v. Secretary of the Commonwealth, 371 Mass. 667, 676 (1977). "The Superior Court is not limited by the restriction on the scope of judicial review of administrative action contained in the State Administrative Procedure Act, G. L. c. 30A." Id. at 677 n.11. See Coulombre v. Board of Registrars of Voters of Worcester, 3 Mass. App. Ct. 206, 207 (1975) ("Administrative Procedure Act does not apply to actions by municipalities"). Most significantly, the Superior Court is not bound by "those provisions limiting the court to consideration of the record before the administrative agency, G. L. c. 30A, § 14 (5), and the limitations as to grounds for overturning an agency decision, G. L. c. 30A, § 14 (7)." McCarthy, supra. [Note 7]

 Nonetheless, the Superior Court's review of local election officials' decisions regarding candidates' and voters' domicils [Note 8] will most often mirror typical review of State agency actions. The 

 Page 22 

pertinent questions will most frequently be, as here, whether the evidence before the officials "was sufficient as [a] matter of law to warrant their decision" and whether they applied the appropriate "legal standards" or instead based their decision "on an incorrect interpretation of the election laws." Dane v. Board of Registrars of Voters of Concord, 374 Mass. 152, 157 (1978). [Note 9]

 b. Legal standards for domicil. The concept of "residence" for the purpose of voting and holding office equates with the concept of "domicil." See Dane, 374 Mass. at 161, and cases cited; Coulombre, 3 Mass. App. Ct. at 208. "A person's domicil is usually the place where he has his home. Home is the place where a person dwells and which is the center of his domestic, social and civil life. A change of domicil takes place when a person with capacity to change his domicil is physically present in a place and intends to make that place his home for the time at least; the fact and intent must concur." (Quotations and citations omitted.) Hershkoff v. Board of Registrars of Voters of Worcester, 366 Mass. 570, 576-577 (1974).

 "Although where a person is domiciled is mainly a question of fact, the elements to be considered in locating a domicil present a question of law" (citation omitted). Reiersen v. Commissioner of Revenue, 26 Mass. App. Ct. 124, 124-125 (1988). Those elements include residential addresses, voter registrations, places 

 Page 23 

of employment, drivers' licenses, car registrations, bank accounts, tax payments, future plans, and any other facts evidencing "attachment to the community and . . . desire and intent to remain." Dane, 374 Mass. at 172. See Secretary of the Commonwealth, Residence for Voting Purposes 3 (2017) (emphasizing "evidence of a person's actions," including "amount of time spent in various places; former residences and voter registrations; future plans; income taxes; bank accounts; telephone listings; places of employment; and religious, social, and political affiliations"). Generally, no single element or combination of elements is dispositive. See Commonwealth v. Davis, 284 Mass. 41, 50 (1933).

 The defendants argue that there are "two separate and distinct standards" for determining domicil "for [S]tate jurisdictional purposes as opposed to municipal elections purposes." Based on this claimed dichotomy, they assert that tax records trump property ownership, voter registration, and driver's licenses for determining eligibility to vote in municipal elections. The relevant case law and the Secretary of the Commonwealth's guidance on which the defendants rely, however, do not support, and in fact flatly contradict, their assertion. Even if "the term domicil . . . displays varying hues as its application shifts," Reiersen, 26 Mass. App. Ct. at 128, "[s]o far as the case before us is concerned, the dichotomy in standards of domicil urged by the [city] need not, and does not, exist," id. at 129.

 Reviewing "the basis of the decision of the [commission] as to the legal standards we think [it] applied," Dane, 374 Mass. at 157, we conclude that the commission's decision was fundamentally flawed as a matter of law. The commission's principal error was treating the residential tax exemption for the Brighton property and Boston's assessment of excise taxes on Lay's car as "prima facie" evidence creating a presumption that Lay resided in Boston. In this regard, the defendants' heavy reliance on G. L. c. 90, § 3 1/2, is misplaced. That statute provides a list of certain actions, including claiming a real estate tax exemption under G. L. c. 59, § 5C, that result in an individual being "deemed" a resident of Massachusetts for purposes of motor vehicle registration. G. L. c. 90, § 3 1/2 (a). The statute is silent as to what makes an individual a resident of a particular municipality within the Commonwealth. Moreover, the statute's provision that a record custodian's certificate of certain facts "shall be prima facie evidence of the person's residency within the commonwealth," G. L. c. 90, § 3 1/2 (b), pertains to specific proceedings to enforce tax 

 Page 24 

and motor vehicle laws well outside the commission's purview. Far from creating a presumption of domicil, what appears on such tax documents is "less likely to be a persuasive indicator of domicil than the physical, business, social, and civic activities of the person whose domicil is in question." Reiersen, 26 Mass. App. at 131.

 Similarly, the commission erred by disregarding the facts that Lay voted in thirteen elections in Lowell, twice ran for the school committee, and served a two-year term on the school committee since purchasing the Lowell property. These actions evidenced where he conducted his civic life, and the commission was required to consider them. See Dane, 374 Mass. at 162, 172. Had Lay's voter registration and candidacies for office been the only evidence of his ties to Lowell, consideration of those facts could have been purely tautological, as the defendants suggest. But with other evidence indicating that Lay lived in Lowell, his decision to exercise important political rights there, and by extension to surrender his ability to exercise those rights in Boston, was highly relevant to the commission's domicil determination. 

 4. Lay's domicil. As noted, the Superior Court judge, "[b]ased on the credible evidence, [found] that the [e]lection [c]ommissioners' decision was not supported by substantial evidence and that Lay is domiciled in Lowell." We agree that the commission's determination, stripped of the legal errors described above, does not withstand scrutiny.

 Domicil determinations ask, at bottom, whether individuals are being truthful about where they call "home." See Hershkoff, 366 Mass. at 580 ("In the absence of any issue of credibility," plaintiffs were domiciled where they claimed); Reiersen, 26 Mass. App. Ct. at 127 (must consider whether objective evidence reinforced or weakened plaintiff's claim of domicil). Lay offered considerable evidence in support of his contention that Lowell was his home: he owned residential property and was billed for utilities there; he used the Lowell property's address for his driver's license, real estate license, medical documentation, credit card and bank accounts, personal correspondence, automobile insurance, and motor vehicle registration (at least until 2019); a neighbor vouched for him; he registered to vote in Lowell the same year he purchased the Lowell property and voted there regularly ever since; and he ran for city office twice and served on the school committee for two years.

 Even if reviewed under the substantial evidence standard, the commission's decision is unsupported. See Boston Gas Co. v. 

 Page 25 

Assessors of Boston, 458 Mass. 715, 721-722 (2011), quoting Tennessee Gas Pipeline Co. v. Assessors of Agawam, 428 Mass. 261, 262 (1998) (agency decision "must [be] set aside . . . if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary'"). Not only did the commission err in according the Boston tax records presumptive weight -- the records had little probative value as to Lay's March 2021 domicil. The homestead declaration and residential exemption for the Brighton property were twelve years old. Lay applied for them six years before he purchased the Lowell property and, moreover, his sister continued to reside in Brighton. See G. L. c. 188, § 10 (a) (3) (homestead terminates for owners who abandon home as principal residence but not for coowners who still live there). The Brighton mailing address for the Lowell property's tax and water bills was also explained by Lay's sister's coownership of the Lowell and Brighton properties. Compare Reiersen, 26 Mass. App. Ct. at 127 (plaintiff domiciled in Philippines even though he owned property in Worcester, listed Worcester address on passport, and maintained Massachusetts driver's license and bank account). Changing the car registration from Lowell to Boston for 2019 and 2020 was some evidence that Lay was domiciled in Boston, see G. L. c. 90, § 2 (motor vehicle registration application to include owner's name and residential address), but it was far from dispositive -- even if his sister did not coown the car. See Hershkoff, 366 Mass. at 573 (plaintiff determined to be domiciled in Worcester even though his car was insured and registered in New York). 

 Voters have a certain amount of freedom to choose their domicil, see Hershkoff, 366 Mass. at 578, and our courts recognize a "strong tradition of resolving voting disputes, where at all possible, in favor of the voter," Santana, 384 Mass. at 491. The Superior Court judge properly determined the issue of domicil, and therefore Lay's eligibility to serve on the school committee, in Lay's favor. [Note 10] 

Judgment affirmed.

FOOTNOTES
[Note 1] Election commission of Lowell. 

[Note 2] The commission did not produce a formal administrative record, and its hearings were not transcribed. We rely on the parties' representations regarding the commission's proceedings. 

[Note 3] These included a medical prescription identification card, gas and electric bills in his name, a 2018 medical bill, a 2018 credit card statement, a 2019 wedding invitation, a current automobile insurance policy, and bank statements from 2017, 2018, 2020, and 2021. 

[Note 4] We note that the city solicitor initiated the commission proceedings, appeared before the commission as an advocate for the city, represented both the city and the commission in the Superior Court, and continues to represent both on appeal. 

[Note 5] It is not clear whether the number of elections in which Lay voted in Lowell, or the fact that the elective office that he previously held was a seat on the school committee, were in evidence before the commission. The Superior Court judge referred to these facts in his memorandum of decision, and the defendants submitted a printout of Lay's voting record with their posttrial motion, see note 6, infra, but these facts are not included in the materials that the parties represent to be their complete submissions to the commission. In any event, these facts are not disputed. 

[Note 6] The defendants subsequently filed a motion for relief from judgment and reconsideration under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), based on "newly discovered evidence"; the judge denied the motion. Because the motion was served more than ten days after the entry of judgment, it did not affect the validity of the defendants' first and only notice of appeal. See Mass. R. A. P. 4 (a) (2) (C), (3), as appearing in 481 Mass. 1606 (2019). However, because the defendants did not file a new notice of appeal after the denial of their motion for relief from the judgment, the issues raised in the motion are not before us. See New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 372 (2001). 

[Note 7] The case law suggests that Superior Court judges (and justices of the Supreme Judicial Court) may take evidence and make independent factual findings in G. L. c. 56, § 59, proceedings, see Coulombre, 3 Mass. App. Ct. at 207-209, and may, in appropriate cases, provide equitable relief, see Hurst v. State Ballot Law Comm'n, 428 Mass. 116, 122 (1998). 

[Note 8] The city solicitor contended that the commission's proceedings to determine Lay's domicil were held pursuant to St. 1954, c. 230. That act, however, vests authority in the "remaining members" of the school committee to fill vacancies on the school committee among individuals who are "eligible and willing to serve." Id. The act does not assign any role to the election commission. Sections 48 and 49 of G. L. c. 51, however, establish procedures for "registrars," defined to include city election commissions, see G. L. c. 50, § 1, to determine whether a registered voter is incorrectly registered, including on domicil grounds, see G. L. c. 51, § 1. General Laws c. 53, § 11, and c. 55B, § 7, establish procedures for city solicitors and election commissions to consider and resolve challenges to local candidates' nomination papers, although no such challenges were lodged against Lay's candidacies in either 2017 or 2019. These provisions of the election laws relating to voter and candidate qualifications provided sufficient basis for the commission's proceedings to determine whether Lay was a resident of Lowell eligible to fill the vacant seat. 

[Note 9] Lay argues that we should set aside the commission's vote as invalid because the vote of one commissioner, with one abstaining and one not voting, was not a majority of the three-member quorum at the hearing. See Merrill v. Lowell, 236 Mass. 463, 467 (1920) ("In the absence of statutory restriction the general rule is that a majority of a council or board is a quorum and a majority of the quorum can act"). Because the commission's voting rules are not in the record and we cannot evaluate Lay's argument without them, see Matter of Hurley, 418 Mass. 649, 653 n.6 (1994), cert. denied, 514 U.S. 1036 (1995), we decline to address this alternative ground for affirming the Superior Court judge's decision. 

[Note 10] The plaintiff's request for appellate attorney's fees is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.