COMMISSIONER OF HEALTH AND HOSPITALS OF BOSTON *vs.*
CIVIL SERVICE COMMISSION.

Suffolk. November 7, 1986. — January 15, 1987.

Present: BROWN, WARNER, & FINE, JJ.

*Civil Service,* Termination of employment, Judicial review, Municipal fi-
nance.

The Civil Service Commission did not have a sufficient legal basis for set-
ting aside the termination of employment, by the deputy commissioner
of community health for the city of Boston department of health and
hospitals, of fourteen dentists paid by the city and employed by neigh-
borhood health centers, autonomous private organizations supported in
part by grants from the city; nor did the fact that eight of the fourteen
dentists terminated continued to work in the health centers as their
employees support the Commission's conclusion that the economic jus-
tification for the dismissals was a pretext for removing the dentists from
civil service protection, where it was undisputed that termination of the
dentists was part of a major necessary effort to cut expenses by the city,
and where the dentists continuing to perform services for the health
centers did so for private organizations not under the control of the city
or any public agency. [413-415]

CIVIL ACTION commenced in the Superior Court Department
on December 21, 1982.

The case was heard by *Jeremiah J. Sullivan, J.,* sitting under
statutory authority.

*Charles E. Walker, Jr.,* Assistant Attorney General, for
Civil Service Commission.

*Lawrence J. Ball,* Special Assistant Corporation Counsel,
for Commissioner of Health and Hospitals of Boston.

FINE, J. In 1981, Lewis L. Pollack, then deputy commis-
sioner of community health for the city of Boston department
of health and hospitals, determined that certain cost-saving
steps had to be taken to meet the fiscal crisis caused by the
adoption of Proposition 2½. Among the measures decided
upon was the termination of employment by the city of fourteen

public health dentists. Each of the dentists had been receiving compensation from the city for twenty-five hours of work performed weekly in one of the twenty-four neighborhood health centers in the city. Dentists who worked in excess of twenty-five hours per week were paid directly by the health centers for the extra time. The health centers are autonomous private organizations supported in part by grants from the city. Eight of the fourteen dentists, after being laid off by the city, continued to work in the health centers as their employees.

The dentists appealed to the Civil Service Commission (Commission). After a hearing, the Commission ordered all of the dentists who were not probationary employees restored to their former positions without loss of compensation. The Commission made findings of fact and concluded that the economic justification for the dismissals was a pretext for removing the dentists from civil service protection and that the "purported job eliminations were in fact a sham because the jobs allegedly eliminated remained functionally intact." Deputy Commissioner Pollack[1] sought review in the Superior Court by an action in the nature of certiorari. A judge in the Superior Court reversed the decision of the Civil Service Commission.

A tenured municipal employee may not be removed without just cause. G. L. c. 31, § 41. A decision of the Civil Service Commission that an action of the appointing authority is not justified must be upheld if legally tenable and supported by substantial evidence on the record as a whole. See G. L. c. 31, § 44. See generally as to the scope of review *Sullivan* v. *Municipal Court of the Roxbury Dist.,* 322 Mass. 566, 572-573 (1948); *Police Commr. of Boston* v. *Municipal Court of the W. Roxbury Dist.,* 368 Mass. 501, 505-507 (1975); *Cambridge Housing Authy.* v. *Civil Serv. Commn.,* 7 Mass. App. Ct. 586, 588 (1979); *Watertown* v. *Arria,* 16 Mass. App. Ct. 331, 334-335 (1983). Having reviewed the record and the subsidiary findings of the Commission, which are not in dispute, we conclude, as did the judge in the Superior Court, that the Commis-

[1] Now the commissioner of the department.

sion did not have a sufficient legal basis for setting aside the termination of the dentists by the appointing authority.

We summarize the relevant facts. The community health component of the budget for the department of health and hospitals for the 1982 fiscal year was short approximately $1,400,000. Deputy Commissioner Pollack sought to effect the necessary savings by adopting certain administrative measures and by terminating 122 positions, including public health physicians, nurses, and dentists. Terminating the dentists saved $650,000 from the budget.

Before 1982, the dental program was an "in kind" program, the salaries of the dentists supplied to the health centers being paid by the city. After the dentists' employment by the city was terminated, that was no longer true. The health centers were funded in 1982 by block grants from the community health component of the department's budget in the amount of $3,200,000, the same amount they had received in 1981. As an independent organization, each health center had to decide how to use the funds to meet its general needs. Specifically, it had to decide whether and to what extent to continue to provide dental services and whether to employ the particular dentist who had supplied those services in the past. The department encouraged the health centers to continue to offer dental services to the communities in which they operated. Additional funds were made available to the health centers in 1982 through the department but from Federal sources. There were no specific requirements as to the use of those additional funds except that, in the case of one health center, they were earmarked for dental services. Soon after the dentists were terminated, Dr. Myron Allukian, administrator of the dental program for the city, actively recruited applicants for dental positions in the health centers. He screened applicants for those positions; he referred applicants to those health centers which were interested in receiving them; and he evaluated their performance if they were hired. The level of dental care provided in the centers, through services provided by the dentists previously employed by the city as well as other dentists, in fact increased in 1982.

There is no dispute that the termination of the dentists was part of a major necessary effort to cut expenses. Nor is it disputed that the city saved money as a result. Lack of money is just cause for a layoff. *Debnam* v. *Belmont,* 388 Mass. 632, 634 (1983). The abolition of a position as part of an effort made in good faith to achieve economy and effectiveness does not run afoul of civil service protections. See *Gardner* v. *Lowell,* 221 Mass. 150, 154 (1915); *McNeil* v. *Mayor of Peabody,* 297 Mass. 499, 504 (1937); *Dooling* v. *Fire Commr. of Malden,* 309 Mass. 156, 162 (1941). The Civil Service Commission may not, in the guise of protecting an aggrieved employee, substitute its judgment for that of an appointing authority as to the wisdom of a particular reorganization plan undertaken for reasons of economy. See *School Comm. of Salem* v. *Civil Serv. Commn.,* 348 Mass. 696, 698-699 (1965). An economic reason may not justify an action, however, if it is a mere pretext for an improper motive for removing an employee. See *Garvey* v. *Lowell,* 199 Mass. 47 (1908) (where the improper motive was political); *Cambridge Housing Authy.* v. *Civil Service Commn.,* 7 Mass. App. Ct. at 589-591 (where it was suggested that the employee's union activities were the real reason for his dismissal); and *Mayor of Somerville* v. *District Court of Somerville,* 317 Mass. 106, 113, 119-125 (1944) (where the marital status of female employees was the real reason for their dismissals). It may also be improper to terminate an employee for the purpose of eliminating his civil service protections. See *Commissioner of Pub. Works of Boston* v. *Municipal Court of the Dorchester Dist.,* 228 Mass. 12, 16-17 (1917). The burden of proof is on the employee to demonstrate that he is being removed in bad faith and for a reason advanced as a mere pretext. See *Mayor of Somerville* v. *District Court of Somerville,* 317 Mass. at 109.

In this case there was no evidence that Deputy Commissioner Pollack was motivated by any improper considerations. The Civil Service Commission based its conclusion that the job eliminations were "a sham" on its assumption that after the reorganization the jobs remained "functionally intact," with the dentists continuing to perform services as before. After the

reorganization, however, no direct dental services were pro-
vided by the city. The health centers are independent private
entities. Although the centers were partially funded by grants
from the city, the city had no control over their decisions
whether to continue the program or to employ any of the
individual dentists. This is borne out by the fact that some of
the health centers declined to continue the program when the
city withdrew its "in kind" support. That the city hoped, under-
standably, that the health centers would undertake to use some
of their funds to continue the program, or that administrative
assistance was provided to the centers in recruiting, hiring,
and monitoring dentists, does not, in our view, require a dif-
ferent result.

The Commission may have been influenced in reaching its
result by our decision in *Cambridge Housing Authy.* v. *Civil
Serv. Commn.,* 7 Mass. App. Ct. at 589-591. In that case, an
individual who had been employed as director of maintenance
challenged his termination as a result of the abolition of his
position. Ostensibly the position was abolished for reasons of
economy. All of his responsibilities within the year before he
was dismissed had been transferred to the position, previously
vacant, of director of management. After the employee's dis-
missal, another employee filling the position of director of
management performed essentially the same combination of
duties. The Commission found that the economic justification
was a mere pretext because after the purported abolition the
position remained "functionally intact." *Id.* at 589. The case
differs significantly from the instant one. There was evidence
in the *Cambridge Housing Authy.* case that the employee's job
was eliminated because of his union activities. *Id.* at 590.
There was also evidence that the abolition was not undertaken
as an economy measure. There was no evidence of like import
in this record. Moreover, in the present case the services,
although similar in nature, were not being performed for the
same agency after the terminations. For that matter the services
were no longer being performed for any public agency. Those
dentists continuing to perform services did so for private organi-

zations not under the control of the city. For this reason, insofar as it is of significance for these purposes, the dentists' positions did not remain "functionally intact."

*Judgment affirmed.*