Jon Hurst & others[1] *vs.* State Ballot Law Commission & others.[2]

Suffolk. June 10, 1998. - July 15, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Elections,* Ballot, Validity of petition. *Constitutional Law,* Initiative petition. *Initiative.*

The State Ballot Law Commission correctly concluded that the placement of the required summary of a challenged law and the names and addresses of the first ten signers at the top of the petition forms used to collect signatures, but below the caption or title thereon, did not violate art. 48 of the Amendments to the Massachusetts Constitution. [829]

Petition forms that bore extraneous preprinted or hand-stamped information about the organization challenging a particular statutory provision, or to which were added highlighting or underlining to emphasize certain portions of the required summary of the challenged law, were not "exact copies" of the original petition blank provided by the Secretary of State for the purpose of collecting signatures and, thus, violated G. L. c. 53, § 22A, and art. 48 of the Amendments to the Massachusetts Constitution; however, in circumstances in which the challengers had reason to believe the hand-stamping complied with § 22A, the signatures on those petitions were not invalidated. [829-831] Greaney, J., with whom Wilkins, C.J., joined, dissenting in part, expressed the opinion that the holding should be entirely prospective and should not be applied to invalidate signatures in this case.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 1, 1998.

The case was reported by *Greaney,* J.

*Thomas R. Kiley* for the plaintiffs.

*Margaret Monsell,* Assistant Attorney General, for State Ballot Law Commission & another.

*Edward Kelly (Gary S. Brackett & John G. Gannon* with him) for John O'Connor & others.

Fried, J. On June 24, 1998, this court issued an order on this matter, with an opinion or opinions to follow to explain our

---

[1]Mark L. Reed and Robert R. Ruddock.

[2]John O'Connor, Carole Allen, Matthew Freedman, Janice L. Nadeau, Anthony Galluccio, Paul P. Korian, Alberta King, Patricia Lynn, James J. Campano, Mary E. Lampert, and the Secretary of the Commonwealth.

reasoning. The plaintiffs challenge a decision of the State Ballot Law Commission (commission) to include on the November, 1998, statewide ballot a referendum to repeal Chapter 164 of the Acts of 1997.[3] They argue that the petition forms used to collect signatures in support of the referendum suffered several defects of constitutional or statutory significance. We hold that some, but not all, of the petition forms were improper, and remand to the commission for further proceedings.

I

On December 3, 1997, the defendants, ten original signers, filed a petition for a referendum on Chapter 164. To comply with the referendum provisions of art. 48 of the Amendments to the Massachusetts Constitution, the defendants were required to gather at least 32,464 certified signatures, no more than one-quarter of which could come from any one county in the Commonwealth.[4] On February 23, 1998, the Secretary of the Commonwealth (Secretary) acknowledged receipt of 44,136 certified signatures, of which 43,469 were allowable under the county distribution rule. On March 19, 1998, the plaintiffs filed an objection with the commission seeking to keep the referendum from the ballot because, they alleged, (1) all the petition forms used to collect signatures violated art. 48's requirement that a summary of the law in question be "at the top" of the form; (2) approximately 8,000 signatures were on forms that violated art. 48 and G. L. c. 53, § 22A, because the referendum's proponents added a preprinted box containing the name of their organization and a return address on the forms; (3) over 17,600 signatures were on forms that improperly contained a hand stamp in blue or red ink with similar information, and (4) approximately 3,400 signatures were invalid because the referendum's proponents highlighted certain sentences on the form.

The commission ruled that the Secretary's arrangement of text on the petition forms did not violate art. 48 and that neither

---

[3]Statute 1997, c. 164, is entitled "An Act relative to restructuring the electric utility industry in the commonwealth, regulating the provision of electricity and other services, and promoting enhanced consumer protections therein."

[4]Article 48, General Provisions, II, of the Amendments to the Massachusetts Constitution, provides in part: "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county."

the preprinted box nor the stamps violated art. 48 or G. L. c. 53, § 22A. The commission declined to rule on the highlighting issue. The commission thus ordered the Secretary to place the referendum on the November, 1998, ballot. The plaintiffs then filed a petition in the Superior Court for judicial review pursuant to G. L. c. 30A, § 14, and G. L. c. 56, § 59. The parties filed a joint motion with a single justice of this court for transfer to the full court. The motion was allowed.

## II

Article 48, The Referendum, III, § 4, of the Massachusetts Constitution states in part:

> "A referendum petition may ask for the repeal of an emergency law . . . . Such petition shall first be signed by ten qualified voters of the commonwealth, and shall then be filed with the secretary of the commonwealth . . . . The secretary of the commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a fair, concise summary of the proposed law as such summary will appear on the ballot together with the names and residences of the first ten signers."

General Laws c. 53, § 22A, states in part:

> "In no case shall any blank forms for such . . . referendum petitions be larger than eight and one half inches by fourteen inches, nor shall anyone be prohibited from making exact copies of such blanks provided by the secretary of state for the purpose of collecting signatures for such petitions, nor shall any such copies be rejected for certification or submittal to the secretary of state."

The plaintiffs claim that the Secretary and the referendum proponents have violated these provisions in their design and use of the petition forms.

Since the adoption of art. 48 in 1918, we have struggled as to how strictly to interpret its detailed provisions and requirements. See *Tobias* v. *Secretary of the Commonwealth*, 419 Mass. 665, 670-671 (1995), citing *Opinion of the Justices*, 309 Mass. 631, 643-644 (1941); *Lincoln* v. *Secretary of the Commonwealth*, 326 Mass. 313 (1950). See also *Citizens for a Competitive Mass.* v. *Secretary of the Commonwealth*, 413

Mass. 25, 30 (1992) ("[a]lthough it is true . . . that the provisions of art. 48 are mandatory rather than directory, . . . it is equally true that our interpretation of the amendment must be 'the one most consonant with [its] general design and purpose' " [citation omitted]). We have recently reaffirmed that "[w]e subscribe to an interpretation of art. 48, as amended, that will achieve its stated purposes. We reject any restrictive reading of art. 48, as amended, that results in a failure to give effect to the purpose for which its words were chosen." *Tobias* v. *Secretary of the Commonwealth, supra* at 674 (holding that the Secretary could provide separate pieces of paper containing ballot summaries, although art. 48 requires summaries to be printed "on the ballot").

Article 48 provides means for the public to participate directly in the lawmaking process, but also safeguards against abuse of those means by special interests to invalidate acts by the people's elected representatives in the Legislature. The State Constitutional Convention of 1917-1918 sought a balance between competing impulses toward direct versus representative democracy. The proper form and use of petitions is an important aspect of the balance art. 48 represents, and our review must respect that balance.

Article 48 and G. L. c. 53, § 22A, require that the forms used to collect signatures be provided by the Secretary of the Commonwealth, and impose certain limitations on the content and layout of those forms. This specificity serves at least two purposes. First, by guaranteeing that all signatories see a fair and complete summary of the challenged law, as well as the signatures of the first ten petitioners, art. 48 guards against the possibility that the public will be misled by those campaigning for a referendum. Second, by dictating that the Secretary must summarize the law in question and create the petition form, art. 48 and G. L. c. 53, § 22A, provide a means for the creation of a neutral form free from advocacy by those for or against the referendum. Like ballot forms and the voting booth, petition forms are thus protected as a space free from the tumult and bias of political sloganeering. See generally *Burson* v. *Freeman*, 504 U.S. 191 (1992) (one hundred foot "campaign free" zone around polling places).

## III

The plaintiffs argue that all the petition forms must be invalidated because the Secretary violated art. 48 by failing to

place the summary of Chapter 164 and the names and addresses of the first ten signers "at the top of each blank."[5] Several items appear above the summary: the title "A Referendum Petition"; the seal of the Commonwealth; the constitutionally required statement that those signing the petition "protest against Chapter 164 of the Acts of 1997"[6]; and certain statutorily required information on the Secretary's filing deadlines.[7] The last, to which the plaintiffs object, is actually printed to the side of the first three items. The Secretary argues that "at the top" means "above the blanks provided for signers," and that the forms comply with this requirement.

Although the Secretary's placement of the summary and names and addresses of the first ten signers is not literally at the top of the petition in the sense that there is nothing above it, the higher placed material is more like a caption or a title. Moreover, we note that the plaintiffs, perhaps recognizing it would be absurd to do so, do not object to the first three items which are placed ahead of the summary. In any event, the layout of the petition forms neither misleads the public nor advocates in any way on behalf of those for or against the referendum. A signer is presented with the constitutionally required information on the form's front and in an immediately accessible manner. For all functional purposes, the summary of the proposed law is "at the top" of the form. The commission was correct in holding that the placement of this information was not in error.

Second, the plaintiffs argue that 8,374 signatures must be invalidated because they were collected on forms to which the defendants had added a printed, and sometimes shaded, box containing the name and address of the defendants' organization: "The Campaign for Fair Electric Rates." In addition, they challenge forms, bearing over 17,600 certified signatures, to which the defendants added a stamp containing similar information. Article 48 requires that the Secretary generate blank forms for use in collecting signatures. Although this could be interpreted to mean that the Secretary must provide all copies of the forms used, the Legislature, pursuant to art. 48, as amended

---

[5]For a history of the provision requiring a summary on the petition form, see *Tobias* v. *Secretary of the Commonwealth*, 419 Mass. 665, 669 (1995).

[6]This information is required by art. 48, The Referendum, III, § 4. See *Mount Washington* v. *Cook*, 288 Mass. 67 (1934).

[7]This information is required by G. L. c. 53, § 22A.

in 1944 by art. 74, has provided that "exact copies" are an acceptable substitute for the original petition blank created by the Secretary. See G. L. c. 53, § 22A. The question, therefore, is whether the forms containing the added preprinted box, stamp, or highlighting are "exact copies."

They are not. Because the additions and alterations which § 22A guards against would be the work not of the Secretary, a neutral government official, but of the advocates of the measure, it is important to interpret the term "exact" exactly. The addition of information such as the name "The Campaign for Fair Electric Rates" to the petition form permits the very sort of advocacy that § 22A defends against. Altering the form, particularly in a way that, as with the printed box, blends together the added information and the original content provided by the Secretary, invades the small but vital area of neutrality that the Constitution and G. L. c. 53, § 22A, demand.

Sorting permissible from impermissible additions on a case by case basis would almost certainly prove an impossible task, and one requiring untestable assumptions about the public's perception of the added information. The defendants argue that the material in the box is purely informational, giving just a name and return address. This case illustrates the difficulty. The name given here is itself a slogan, and that slogan is added to the form, which is supposed to be an "exact" copy of the officially sanctioned petition. In future cases the name might be more neutral, or it might be a good deal lengthier and more shrill. The commission cannot and should not have to draw fine lines distinguishing them. The statute draws a sufficiently clear line. The petition must be an exact copy of the official form, nothing less and nothing more. We therefore hold today that no alterations — additions or deletions — of any sort may be made to forms provided by the Secretary under art. 48 and § 22A.

In this case, however, we apply this holding only to those petition forms to which the defendants added the printed box, and not to those forms on which the defendants hand stamped a name and return address. These stamps were generally perpendicular to the printing on the ballot and in red or blue ink. The Secretary warned the defendants against the printed box but not the stamps (a distinction to which the dissent does not advert), and the defendants relied on the commission's prior decision in Ann Marie Johnnene vs. Robert Chip Ford, SBLC 96-1, which held that such stamps are permissible. We take very seriously the invalidation of over 17,600 signatures of voters in

the Commonwealth who desire a referendum on Chapter 164, and because the defendants, and those voters, had reason to believe that the stamps complied with § 22A, we do not apply the rule announced today to the stamped petition forms. As to such hand stamps, this decision is prospective only.

Third, the plaintiffs challenge approximately 3,400 signatures collected on forms to which the defendants added highlighting or underlining to emphasize certain sentences of the Secretary's summary of Chapter 164. By altering the petition forms in this way, those collecting signatures could only have intended to draw a signer's attention to those parts of the summary that favored their cause. Even more than the addition of a name and address, such highlighting constitutes impermissible advocacy. The signatures on these forms must therefore be invalidated.[8]

## IV

The parties disagree about whether the elimination of those forms to which the defendants added a printed box and those forms to which the defendants added highlighting or similar markings reduces the number of valid signatures to below the required minimum. Their dispute turns in part upon the admissibility of several hundred signatures from Barnstable and Berkshire counties that were collected on forms containing either a printed box or highlighting. The plaintiffs argue that these signatures should not count toward the total. The defendants claim that the plaintiffs failed to object in a timely fashion to the inclusion of these signatures, and did not include these Barnstable and Berkshire signatures in the "list of signatures" objected to as required by 950 Code Mass. Regs. § 59.03(18).[9]

---

[8]Although in a postargument letter to the court the Secretary asks that we remand the highlighting issue to the commission for its determination, we reach the issue because it is so closely related to our decision regarding the preprinted boxes and stamps and indeed follows a fortiori from it.

[9]State Ballot Law Commission, Adjudicatory Proceedings, Formal Standard Rules: Modifications, 950 Code Mass. Regs. § 59.03(18) (1993), states:

"List of signatures. Not later than the third weekday before the date of the hearing contained in the Secretary's notice, the objector shall file and cause to be delivered to the respondent a list of all signatures on the respondent's nomination paper or petition which are drawn in question by the objection, showing the page and line where each is located, and the reason why each is alleged to be improper."

The commission did not reach this issue.[10]

GREANEY, J. (dissenting in part, with whom Wilkins, C.J., joins). In examining the petitions supporting the referendum, we must keep uppermost in mind that "art. 48 . . . created a people's process . . . [which] was intended to provide both a check on legislative action and a means of circumventing an unresponsive General Court." *Buckley* v. *Secretary of the Commonwealth*, 371 Mass. 195, 199 (1976). Our interpretations of the process are guided by the "firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and [repeal] laws." *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 211 (1988). Thus, petitions should not be examined in a hypertechnical manner which may contravene the people's right to repeal a law which they believe was improvidently enacted.

The court correctly holds that the Secretary's arrangement of the summary of Chapter 164, and the names and addresses of the first ten signers, did not violate the requirement of art. 48, § 4, concerning the information that must be contained "at the top of each blank." I also agree with the court that the addition to the face of the petitions of other extraneous material, either printed or stamped, which may subtly or overtly convey an advocacy position violates the "exact copies" requirement of G. L. c. 53, § 22A.

I conclude, however, that this holding should be entirely prospective and should not be applied to invalidate the 8,374 signatures that were collected on petitions which contained printed (and sometimes shaded) boxes stating the names and addresses of the organizations sponsoring the referendum. As the court acknowledges, "similar" information is conveyed by the stamps and the printed boxes. The Commission's prior decision in Ann Marie Johnnene *vs.* Robert Chip Ford, SBLC 96-1, held that stamps providing the names and addresses of the sponsoring organizations are permissible. A reasonable person reading the Johnnene decision would conclude that putting the names and addresses in printed boxes was also permissible. This being so, it is overly technical in my opinion to differenti-

---

[10]There was an excess of signatures from Middlesex County. The commission should consider if those signatures were valid and, if they were, what bearing this would have on the conclusion.

ate between the petitions conveying similar information through printed boxes and stamps. Affirmance of the commission's decision on these two contested matters strikes a proper balance between sensible application of the general principles supporting the people's process provided for by art. 48 and the need to preserve the integrity of that process consistent with the mandate contained in G. L. c. 53, § 22A. Because it is agreed that there are sufficient valid signatures to support the referendum when the petitions with printed boxes are counted, there is no need to remand the case to the commission for further inquiry.