THOMAS J. WALSH & others[1] *vs.* SECRETARY OF THE
COMMONWEALTH.

Suffolk. May 7, 1999. - July 16, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Elections,* Validity of petition. *Constitutional Law,* Initiative petition, Freedom
of speech and press. *Initiative.*

This court declined to reconsider or modify the holding of *Hurst* v. *State Bal-
lot Law Comm'n,* 427 Mass. 825, 830 (1998), and stated that the appropri-
ate test for determining whether a copy of an initiative petition form is
valid is whether it is an "exact copy" of the original form provided by the
Secretary of the Commonwealth. [104-108]
The "exact copy" requirement of G. L. c. 53, § 22A, applicable to copies of
blank intiative petition forms provided by the Secretary of the Com-
monwealth in accordance with art. 48, The Referendum, III, § 4, of the
Amendments to the Massachusetts Constitution, is not a severe encroach-
ment or a direct restraint on the right to propound a petition.or to have a
signature counted, and the State interest in preventing misleading petitions
and advocacy outweighs any minimal burden on petition proponents to
adhere to the requirement. [108-110]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on January 6, 1999.

The case was reported by *Marshall,* J.

*Michael C. Gilleran* for the plaintiffs.

*Peter Sacks,* Assistant Attorney General, for the defendant.

*Sandra C. Quinn* for Massachusetts Teachers Association,
amicus curiae.

*Steven S. Epstein* for Citizens for Limited Taxation, amicus
curiae, submitted a brief.

*Philip B. Benjamin* for Common Cause Massachusetts, am-
icus curiae, submitted a brief.

ABRAMS, J. At issue is whether we should change the bright-

---

[1]Patricia A. Aries, Stephen Wirzburger, Susan Wirzburger, Pauline E. Mc-
Donald, David McDonald, Lydia Ann Nelson, Alfred J. Falconieri, Jane M.
Falconieri, and Bill Owens.

line rule announced in *Hurst* v. *State Ballot Law Comm'n*, 427 Mass. 825, 830 (1998). The holding in *Hurst* requires invalidation of voter signatures on initiative petition forms which are not exact copies or which bear marks or alterations. The plaintiffs, the first ten signers of an initiative petition, sought relief from a single justice of this court pursuant to G. L. c. 56, § 59, after the Secretary of the Commonwealth (Secretary) determined that a number of petition forms were invalid under the rule announced in *Hurst*. The plaintiffs sought a preliminary injunction requiring the Secretary to transmit the petition to the House of Representatives, to which the Secretary consented. The single justice entered the preliminary injunction and reported the case to this court.[2] We conclude that the Secretary properly excluded the petition forms and we should adhere to the rule announced in *Hurst*.

In August, 1998, the plaintiffs filed with the Attorney General an initiative petition.[3] The Secretary released petition forms to the plaintiffs. The plaintiffs filed forms bearing 58,932 certified signatures. In December, 1998, the Secretary, relying on *Hurst*, disallowed 3,507 of the signatures because they were on forms which were not exact copies or which contained extraneous markings. Thus, the plaintiffs fell short of the 57,100 signatures needed for the Secretary to forward the petition to the Clerk of the House of Representatives.

The parties stipulated to a chart showing twenty-eight categories of disqualifying imperfections and the number of signatures disallowed under each category.[4] See note 7, *infra*. The parties also submitted a sample of each imperfection.

*The exact copy requirement.* Before addressing the issues, it is helpful to review briefly our holding in *Hurst*. In that case,

---

[2]The parties originally filed a joint motion to report a question of law to the court. However, after a third party's motion to intervene was denied, the full case was reported.

[3]The Attorney General originally refused to certify the petition, because he believed that it contained matters excluded from the petition process under art. 48 of the Amendments to the Constitution of the Commonwealth. Several of the plaintiffs challenged this action in Federal court. Pursuant to an agreement between the parties, the Federal court entered an injunction directing the Secretary to release petition forms and to allow the petition process to proceed.

[4]Where a signature was disqualified under more than one category, the parties counted the signature more than once. Thus, were we to validate some of the signatures, we would still have to evaluate each category in order to allow the Secretary to determine whether the petition could go forward.

the petition circulators gathered signatures on forms containing (1) a preprinted box with the proponents' organization name and address, (2) a hand stamp with the same information, and (3) highlighting of information in the summary section of the form. We read G. L. c. 53, § 22A[5] (exact copy statute), and art. 48[6] to protect the public from being misled and to "provide a means for the creation of a neutral form free from advocacy by those for or against the referendum. Like ballot forms and the voting booth, petition forms are thus protected as space free from the tumult and bias of political sloganeering." *Hurst, supra* at 828. We noted that "exact copies" of petition forms could be made by petition proponents. However, we said that additions and alterations by persons other than the Secretary "invade[] the small but vital area of neutrality that the Constitution and G. L. c. 53, § 22A, demand." *Id.* at 830. We concluded that "[s]orting permissible and impermissible additions on a case by case basis would almost certainly prove an impossible task, and one requiring untestable assumptions about the public's perception of the added information." *Id.* "We therefore [held] that no alterations — additions or deletions — of any sort may be made in forms provided by the Secretary under art. 48 and § 22A." *Id.*

The plaintiffs ground their request to alter the rule in *Hurst* in the First Amendment to the United States Constitution.[7] The plaintiffs call the right to propound and sign initiative petitions

---

[5]General Laws c. 53, § 22A, states in part: "In no case shall any blank forms for such . . . referendum petitions be larger than eight and one half inches by fourteen inches, nor shall anyone be prohibited from making exact copies of such blanks provided by the Secretary of [S]tate for the purpose of collecting signatures for such petitions, nor shall any such copies be rejected for certification or submittal to the secretary of state."

[6]Article 48, The Referendum, III, § 4, of the Amendments to the Massachusetts Constitution states, in part: "A referendum petition may ask for the repeal of an emergency law . . . . Such petition shall first then be signed by ten qualified voters of the commonwealth, and shall be filed with the Secretary of the commonwealth . . . . The Secretary of the commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a fair, concise summary of the proposed law as such summary will appear on the ballot together with the names and residences of the first ten signers."

[7]In the agreed on classification chart, the parties cite the following reasons why petitions were disqualified: (1) underlining of text in summary; (2) highlighting of text in summary; (3) highlighting of the words "City or Town"; (4) highlighting of name of city or town; (5) highlighting of filing deadlines; (6) name of city or town written above summary which does not

a fundamental right. They assert that the disqualification of signatures is a severe burden on that right that can only be justified by a compelling State interest and a narrowly tailored restriction.[8] According to the plaintiffs, the justification for requiring pristine petitions in *Hurst* was the administrative convenience of not sorting through petitions to search for advocacy or misleading alterations. They contend that this rationale is insufficient to justify the severe burden on their rights. The plaintiffs also argue that the purpose of art. 48 is to support the initiative process and that we should not contravene that purpose, absent a compelling interest, by applying overly

call attention to or diminish legibility of summary; (7) handwritten number above summary which does not call attention to or diminish legibility of summary; (8) name and telephone number above summary which does not call attention to or diminish legibility of text; (9) number near first ten signers' information or Secretary's certification which does not call attention to or diminish legibility of information or certification; (10) name of city or town near first ten signers' information or Secretary's certification which does not call attention to or diminish legibility of information or certification; (11) telephone number at top of petition; (12) date at top of petition; (13) name and telephone number at top of petition; (14) name at top of petition; (15) number at top of petition; (16) name of city or town at top of petition; (17) instruction at top of petition; (18) number and initial at top of petition; (19) the word "over" at bottom of petition; (20) no place for registrars to certify petition because of copying error; (21) wrong number of signature lines on petition because of copying error; (22) two "front" sides because of copying error; (23) "attention voters" line on top back of petition missing or legibility of line diminished because of copying error; (24) spotted highlighting which does not draw attention to or diminish legibility of summary, first ten signers' information, or Secretary's certification; (25) spotted highlighting which *does* draw attention to or diminish legibility of summary, first ten signers' information, or Secretary's certification; (26) scribbles or doodles which do not draw attention to or diminish legibility of summary, first ten signers' information, or Secretary's certification; (27) scribbles or doodles which *do* draw attention to or diminish legibility of summary, first ten signers' information, or Secretary's certification; (28) other: a. "Registrars of Voters" circled in deadline box; b. "street address" written beside "now registered at"; c. writing at bottom on back; d. miscopied: missing words in summary, on right side of front; e. name and number at top on back; f. instructions highlighted; g. back missing because of copying error; h. altered deadline; i. name of city placed vertically next to signature lines.

The plaintiffs concede that the underlining or highlighting of words in the summary is a proper reason to exclude a petition.

[8]According to the plaintiffs, there is a risk that a mark made on a petition after a signature will disqualify the foregoing signature. The plaintiffs call this "retroactive" disqualification and argue that it is a severe burden, entitled to strict scrutiny.

technical rules. The plaintiffs argue that the imperfections on the petitions, with the exceptions of the highlighting or underlining of words in the summary prepared by the Secretary, are not advocacy or misleading, and thus, those petitions should not be invalidated.[9] The plaintiffs would include petitions which were copied imperfectly.[10]

The Secretary argues that we should alter the holding of *Hurst* to qualify some of the signatures. According to the Secretary, the exact copy statute only regulates alterations made in the copying process, while art. 48 prohibits alterations that are misleading or constitute advocacy. In *Hurst*, he argues, the exact copy statute invalidated those petitions with preprinted information because those forms were not exact copies of the ones created by the Secretary. The other forms, containing stamps and underlined or highlighted summaries, were disqualified because they violated art. 48. Applying that analysis to this case, the Secretary argues that those markings on forms which misled the public or served as advocacy should be invalidated under art. 48 and inexact copies should be invalidated under the statute. However, the remaining marks, which neither misled nor advocated, should not invalidate petitions. The Secretary believes that a bright-line rule places too great a burden on the initiative process.[11]

The Legislature has instructed that "exact copies" of petition

---

[9]The plaintiffs also argue that only misleading marks should disqualify petitions. According to the plaintiffs, the petition circulation process is replete with advocacy and there is no justifiable reason to prohibit advocacy on the petition itself. We disagree. Like voting booths, the petition forms should serve as "a space free from the tumult and bias of political sloganeering." *Hurst* v. *State Ballot Law Comm'n*, 427 Mass. 825, 828 (1998).

[10]The plaintiffs also suggest that the rule in *Hurst* may cause opponents of an initiative to sabotage a petition by sending saboteurs to place extraneous marks on the form. While we are mindful of that potential, we believe the criminal penalties for such actions, listed on each petition, are a sufficient deterrent. G. L. c. 56, § 11.

The plaintiffs also suggest that, under the dictates of *Hurst*, a petition drive could only be conducted by professionals or a large organization. There is no record support for that assertion. Indeed, in the present case, "amateurs" gathered 55,425 valid signatures.

[11]At oral argument, the Secretary argued that the State Ballot Law Commission should determine, on objection, if a mark on a petition was improper. If such a determination were made, then the petition would be presumptively disqualified. However, if the proponent of the petition could establish that the alteration was made after the form was signed or that the alteration did not affect the signers, then the signatures could be saved.

blanks provided by the Secretary may be used to gather signatures. Exact copy means exact copy. See *Hurst, supra* at 828-830. The statute does not permit any alterations of forms, whether by copying machine, petition circulator, or petition signer.

We decline the Secretary's invitation to apply a case-by-case review under art. 48 and the bright-line test under the exact copy statute.[12] Both protect against misleading the public and advocacy. See *Hurst, supra* at 828. It would be anomalous to use a different standard to determine whether an alteration should invalidate a signature depending on whether that alteration was placed during copying or during circulation. The alterations have the same potential effect. We think the appropriate test is whether the copy is an exact copy of the original form provided by the Secretary.[13]

We turn to whether our application of this standard conflicts with the First Amendment. We conclude that it does not. The United States Supreme Court recently reiterated that "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process." *Buckley* v. *American Constitutional Law Found., Inc.,* 525 U.S. 182, 191 (1999). Noting that petition circulation is "core political speech," *id.* at 639, the Court has recognized that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* at 640, quoting *Storer*

---

[12]There is a difference between the judgments that would need to be made in determining whether a mark was advocacy or misleading and other types of judgments which are in the initiative process under art. 48. While most other judgments are made once and applied to each and every petition across the board, here, individual judgments would be required about every alteration. Here, 3,507 signatures were disallowed for 4,253 reasons. Were we to allow petitions based on whether markings or copying errors were misleading or constituted advocacy, evidentiary hearings would be required on each alteration to determine whether each signature on each disqualified page were affected. Similarly, evidentiary hearings would be required to determine when a mark or alteration was made. Signers could be required to testify at such proceedings. We decline to so burden citizens who sign petitions.

[13]The Secretary argues that a number of alterations to the forms, designed to facilitate the circulation of the petition, should be allowed. These alterations include the addition of the words "street address" or "over," the highlighting of the filing deadline or "CITY OR TOWN," and the writing of a city or town name on the forms. The Secretary can make these changes on the form he provides to petitioners.

v. *Brown*, 415 U.S. 724, 730 (1974). See *Burdick* v. *Takushi*, 504 U.S. 428, 433 (1992). There is no "litmus-paper test" which separates valid from invalid ballot access provisions. *Buckley, supra* at 642. Not every law which imposes a burden on the right to vote is subject to strict scrutiny. See *Burdick, supra* at 432. Rather, we must weigh the character and magnitude of the asserted injury to the rights protected by the First Amendment against the State's interests which justify the burden, taking into consideration the extent the State interests make it necessary to burden the plaintiffs' rights. See *Burdick, supra* at 434. When a law imposes a "reasonable, nondiscriminatory restriction" on the First Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restriction. *Id.*

We address the injury to and burden on petition proponents. Contrary to the plaintiffs' contention, the exact copy requirement is not a severe encroachment or a direct restraint on the right to propound a petition or to have one's signature counted. Rather, the rule imposes a burden on petition proponents to make exact copies of the original and on circulators and signers to not "scribble," "doodle," highlight, underline, or write extraneous information on petitions. It requires signers and circulators to follow the warning on each petition: *"DO NOT ALTER* THIS INITIATIVE PETITION FORM IN ANY WAY. ADDITIONAL MARKINGS ON THIS PETITION WILL DISQUALIFY ANY SIGNATURES ON THIS PAGE." This burden is not onerous. The restriction does not discriminate between one signer and another or one initiative and another.[14] Further, the restriction does not prevent petition circulators from orally advocating for their cause.

Against these burdens, we weigh the State interests, identified in *Hurst*, in regulating the petition process. See *ante* at 104-105. Contrary to the plaintiffs' argument, this is not a rule of administrative convenience. The regulation of petition forms is premised on the need to prevent misleading petitions and

[14]The plaintiffs argue that the Secretary has applied a different set of rules to the signing of candidate petitions, by not invalidating petitions with a number on the front, top center. The plaintiffs argue that the same standards must be applied to both types of petitions under G. L. c. 53, § 22A, and under art. 48, and argue that the disparate application of *Hurst* violates their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. This argument was not raised before the single justice and the record is inadequate to decide this issue.

advocacy. We conclude that the State interests outweigh the minimal burden on petition proponents.

The plaintiffs' request for relief is denied. This matter is remanded to the county court for entry of a judgment denying the plaintiffs' request for relief.

*So ordered.*

Justice Fried participated in the deliberation on this case, but resigned before the opinion was issued.